May it please the Court, my name is Michael Lulay. I represent the petitioner. We're appellant. The Workers' Compensation Commission, affirmed by the Circuit Court, erred finding that the petitioner did not prove that her lateral meniscus tear to her left knee was from her injury at work on June 29, 2007. Its finding was against the manifest way to the evidence in that regard. Yes, she previously injured her left knee on May 20, 2007 while playing soccer, but by her fall at work on June 29 the same year, she only needed one day off work for the soccer injury and resumed a full 40-hour work week fast-paced on her feet as a supervising working manager at a Wendy's restaurant. She needed no supportive bracing. What was the date of the accident? The date of the soccer injury was May 20, 2007. The date of the injury at work was June 29, 2007. So then a month. Right, we're a month later. A month has passed. She missed the day after her soccer injury, went right back to 40 hours a week, on her feet, fast-paced work, never a supportive brace. On June 2, 2007, she was MRI'd and the radiologist read the image to show only an ACL tear and possibly a medial meniscus tear. No lateral tear existed. On June 8, she saw her general practitioner and reported 50% improvement in her condition. On June 11, her orthopedic surgeon similarly diagnosed ACL tear and a medial meniscus tear, not a lateral tear of the medial meniscus. She was scheduled for surgery to only repair her ACL and possibly her medial meniscus. And besides these opinions by the radiologist and her orthopedic surgeon that did not include any lateral meniscus tear from the soccer injury, there was also no exam findings during this course of care consistent with a lateral meniscus tear. So then we have our fall at work, June 29, 2007. I'm sorry, am I saying the wrong date? Thank you so much. June 19. June 19. She falls because she slips in a pool of water that was splashed as overflow around a cleaning station. And she actually this time hears a pop when her knee twists. She can no longer stand. She can no longer walk. She has to be removed, carried by her husband from the restaurant. She never again can stand during this entire course of time ensuing for her care from this point forward without the use of a brace. On her visit to her orthopedic surgeon, the first visit to the orthopedic surgeon after this incident, he found new positive findings, this time being what he calls valgus testing that was previously stable. That is Dr. Burra. Burra is her initial orthopedic treating doctor who saw her before and after. This time he prescribes a brace. This time he prescribes no weight bearing. This time he prescribes don't work and continues forward with a protracted scheduled surgery date on the books. Now, Ms. Perez then goes to a second choice surgeon in the hopes of a sooner surgery on his schedule. And that is where Dr. Schaefer enters in. And on his exam, he notes by history new complaints in the nature of lateral sided pain. Let me see if I can summarize part of this. Of course. Initially, Schaefer thought the claimant's workplace accident would not cause her any further significant problems. Correct. However, he changed his opinion after he did the surgery and got in and said that the workplace accident did cause the lateral meniscal tear. Correct. The employer has Dr. Levin who gives a contrary opinion, correct? No. He gave a consistent opinion? Well, in his report, he gives no opinion in connection with the existence or nonexistence of a lateral meniscal tear. At his deposition, he says he can only say as much as there would have been a concern for a lateral meniscus tear based on his review of the radiograph. He never says, well, he does start out saying he sees one, but he ends up saying he doesn't actually see one because there's an artifact. Didn't he opine that if there's a lateral meniscus tear, it was caused by the soccer injury and not the workplace accident? Didn't he say that? Well, which time? In his report or in his dep? Did he ever say that? In his deposition, I did not get that. No. In his deposition, he believed that because there was a, quote, unquote, concern for both, that it was from the soccer injury. So I suppose in that way he said that. Did he explicitly come out and say that? No. Did he explicitly say he had an opinion in that regard based on a reasonable degree of medical and surgical certainty? No. Well, the commission thought he did because they said they relied on his opinion that there was no workplace accident. I totally agree with you. So he had to have some opinion somewhere, didn't he? Or did they pull this one out of the whole cloth? The implication of him saying that I can see what nobody else can see on this MRI, and that is a concern for the lateral meniscus the same as a concern for the medial meniscus, which he in sum told me meant that there could be no tear to either or a tear to either, in his opinion, allowed him to say that he believes for no other reason that the soccer injury caused the lateral meniscus tear. Well, that's what we want to know. I mean, you're dancing around it. So whether or not you find flaws in his analysis, there's a missing factual foundation, you have to concede he said something like that, didn't he? He said something like there was a concern based on his review of the MRI, but I don't – I honestly don't recall him ever connecting the two and saying this was so. Well, then what happened? How did he lose his case before they arbitrated? I don't know. My point was that going into the – Oh, oh, oh, I can answer that. Okay. So let's go to the report. The report is what was adopted by the commission, and in the report, he concludes that her injuries, whatever it was that she was treated for, without specifying which, in the conclusion, were caused by the soccer injury, but before he draws – okay, before he draws that conclusion, he says, in summary, this examinee sustained an injury while playing soccer on May 20, 2007, and she had clinical findings as well as MRI findings, parenthesis, the study dated June 2, 2007, close parenthesis, consistent with an ACL tear of the left knee and a medial meniscal tear. This entire case, up until the moment he went live at his deposition, was in the mind's eye of the respondent and in the mind's eye of this IME operating under the false assumption that she had surgery to repair a medial meniscal tear. Ergo, we go live, there's a little chatter at the beginning of the deposition, defense counsel leads him up to, you know, basically – you mean lateral? Okay, so before we go live, yes, he has an opinion that the surgery was made necessary by the soccer injury, and he believed the surgery included the medial meniscal tear that had been suspected by the radiologist, that had been suspected by the GP, that had been suspected by the Dr. Burra, all of them, and that had been suspected by the radiologist. However, he never had the benefit of the operative report, and in the medical records that he reviewed, if you read both of his reports, he marches through Dr. Schaefer's records thinking he's got an easy one, because like you say, Your Honor, Dr. Schaefer says at some point, you know what, we're going to see it's surgery, but I don't think there's any further problem here, and then after surgery she comes in and he writes in his medical record, we discussed the medial meniscal tear. He doesn't say which medial meniscus. You have to have the operative report to link this together, so poor Dr. Levin thinks he's got it all within the records, he draws the same conclusion he thinks as Dr. Schaefer did earlier, based on all of the obvious belief that there's possibly a medial tear, without ever realizing there was a lateral tear. His entire 13 pages of single spaced reports do not contain a single reference to the fact that a lateral tear was repaired, not a medial tear. That should be a big oh my gosh to any doctor. We all went in expecting to see a medial, we found a lateral and we didn't find a small one. We found a huge one, one that there's no way could be missed on an MRI. It's multidirectional, it goes to what orthopedically is called the red red zone, to the white white zone, and all of it couldn't even be saved. And Dr. Schaefer, credibly, at the day of surgery dictates a report saying, we knew going in here that we didn't know exactly what we'd find, there was no point in re-MRIing her, but what we didn't expect to see based on the prior MRI, because it wasn't there, he says, because it wasn't there. So your position is Levin, in his report, didn't take into consideration the operative findings? He didn't know. He didn't know. He didn't know. He fell lock step into a trick bag. And in live testimony I was upset because he's all of a sudden going, ah, the lateral tear, the lateral tear. And I'm like, in his report that I read, that's bolded language. He bolds medial, and he bolds ACL, and he bolds left knee in his sentence drawing the conclusion that these things were, there was no medial tear. However, in the extensive cross-examination that you conducted in the deposition, he does continue to say that the cause of the lateral tear was from the socket wound. And, you know, he also testifies that there's evidence of that in the MRI, right? Yeah. And he does give those opinions. He says that, doesn't say there's evidence of a tear, depending upon where you're talking. He says, because there's an artifact, there might be a tear that I can't see. Well, he says there's evidence. So that's his patchwork. We don't even have an admissible opinion at that point. He says the MRI film showed fluid in the menisci, and when fluid is present, there's a high clinical correlation to a tearing of the meniscus. And he says, quote, that's where the same location is where Dr. Schaefer found the tear. Point taken. And he said menisci, and that's my point, is he never says he sees a tear of the lateral. He says, based on these MRI findings, which I can't tell if there is or isn't a tear, there could have been. I want to change the subject just a little bit. We have Dr. Levin's report. And Dr. Levin's report, as you said, speaks only to an ACL tear of the left knee and a medial meniscal tear. His damaging testimony, however, related to his opinions relating to a lateral meniscus tear. Is that correct? Which only came up at deposition. Was his report ever amended? No, no, no. No, the first I knew of any of the... The first he knew there was a lateral meniscal tear was at deposition. You made a GEER objection. I did, GEER, yes. It was overruled. Yes. And without his testimony as to the lateral meniscus tear, which was never disclosed in his report, could there possibly be a finding of no causal connection based on the evidence in this record? Neither with nor without, in my estimation. No, of course you're correct, Your Honor. Without his opinion, is there any opinion in this record that that lateral meniscus tear is not causally related to her workplace injury? No. From anybody? No. So it rests solely and exclusively upon opinion he gave in a deposition that was never disclosed in his report. That is very true. And in theory... I'm sorry, time's up. Your time is up. Thank you very much. You'll have time on the floor. Of course. Good morning, Your Honors. Daniel Egan on behalf of the employer Wendy's. I'm going to go right to Dr. Levin's August 19, 2009 report that is in the appendix of the initial brief. Page 5, first full paragraph. So he indicates, one, contrary to counsel's argument, that he had the operative report that it indicated a lateral meniscus tear. Page 8 of his same report, August 19, 2009. We ask you to advise your opinion as to a causal relationship between the claimed work injury and the surgery that was performed. The answer, there is no relationship between her alleged work injury and her surgery. The basis of this opinion was stated in my comments above. Where's the surprise? Where's the lack of a disclosure that the lateral meniscus tear was not related to the work injury? It's there. The case law after Geer, specifically Kishwaukee Hospital and Homebright, has said that you don't have to disclose word for word the opinion of the opponent. Wait a minute. This is a little bit different than leaving out an adjective or an adverb. Page, whatever page of his opinion it is, where he's got his summary in bold letters. He renders opinions as to an ACL tear of the left knee and a meniscal tear. And then he goes on to say, as outlined above, when her treating physician assessed her on June 28, 2007, after the alleged injury on June 29th, he commented that he did not believe that a recent work-related injury would cause her any further significant problems with her left knee, other than what was already present and preexisting. My independent review of the records herein is consistent with Dr. Schaffer's opinion. Of course, we all know that until Schaffer operated, no one found a lateral tear. And no one found a medial meniscus tear. The medial meniscus was pristine. So how can we have a pristine? Whoa, whoa, whoa. What did Burra have to say? As far as what? Burra said, he turns around and says, following the soccer injury, there was a meniscal pathology following the soccer injury beyond the ACL tear, although the medial, not lateral, meniscus. So he turns around and says, there is a meniscus pathology here. It's medial. It's not lateral. You bring in an expert that turns out a report that says medial meniscus, ACL, left knee not related to work-related injury, and then he gives a deposition and talks all day about lateral. Well, he talks about the surgery in his report. Just because he mentioned the surgery doesn't mean he gave an opinion on it. Well, I think he did because he says, again, at page 8, there is no relationship between her alleged work injury and her surgery. Well, her alleged work injury, according to him, is a meniscal tear. No. It's an alleged work or the alleged work injury. I'm sorry. She has an ACL tear that is non-occupational in nature. Everybody agrees on that. There is a suspicion of a medial meniscus tear. She has the incident at work. She's already scheduled for surgery, by the way, before that incident. They do the surgery, going in thinking they're going to find a medial meniscus tear and the ACL rupture. The medial meniscus is pristine. There is no tear. Her complaints, we don't know why she has medial-sided complaints, but they're certainly not related to a medial meniscus tear. She does have a lateral meniscus tear. And Dr. Levin opined that his, the surgery that was performed was not related to a work injury. Period. I'm sorry, go ahead. Period. He just said that. It was not related. It's not related. Wait a minute. He gives a statement talking about what he talks about, what he's saying he's examining. In summary, this examinee sustained an injury while playing soccer. And she had clinical findings as well as MRI findings. The study dated June 2nd, 2007, consistent with an ACL, big bold letters now, consistent with an ACL tear of the left knee and a medial meniscal tear, as outlined above when her treating physician, Dr. Schaefer, assessed her on June 28th, 2007. When did he operate, by the way? What was the date? I think it was July. Of what year? Same year. Okay. But we're talking now, and by the way, nobody found any lateral meniscus tear even talked about until after the operation. I'm sorry? Did anyone talk about a lateral meniscus tear prior to the operation? No. Okay. I'm sorry. As outlined above, when her treating physician assessed her on June 28th, this is before anybody knew she even had a lateral meniscus tear, after the alleged injury on June the 19th, he commented that he did not believe that her recent work-related injuries would cause her any further significant problems with her left knee other than what was already present and preexisting. Now, that's before he even knows she's got a lateral meniscus tear, is what Schaefer is talking about. My independent review of the records is consistent with Schaefer. And you're saying we're supposed to eke out of that that he had an opinion about a lateral meniscus tear? I need to back up. The MRI that was performed at the beginning of June made reference to a potential tear medially and laterally. There was artifact. And because her complaints were medial in nature, they suggest a clinical correlation. Even Burra said no lateral tear. Burra's opinion was no lateral tear. But there was no medial tear either. So we're looking at an MRI that is in clinical. My concern here, Mr. Egan, is it's like checking and erasing in a card game. You give them an opinion based on no relationship to a medial meniscus tear and an ACL pathology and an ACL tear to a workplace injury, and then you put a guy in the stand and his whole day is about lateral tears. There's no opinion in here about a lateral tear. There's a general opinion about what he's talking about. And what he's talking about is a meniscus tear. He does talk about a lateral meniscus tear. He talks about a surgical report. He talks about the surgery not being related to his work injury. Yes. Specifically, Mr. Egan, in his first report, he says that he reviewed the operative report. He said that there's an operative report dated July 26, 2007, which reveals that the examinee underwent left knee arthroscopy with anterior cruciate reconstruction with telegraph and a lateral meniscal repair. So he says in his report he reviewed the operative report of that. Then in his actual final opinion on his second report, he says, furthermore, it is my opinion that her surgical intervention performed by Dr. Schaefer on July 26, 2007, is related to an injury she sustained while playing soccer and not to any injury apart from 19, 2007. So he says, I read the report where she had lateral repair, and then he says, in my opinion, that's not related to the injury at work. Correct. Correct. So he does say that. He does say that. Thank you. I forgot about the first report. He does say that in two places, in the first report and in the second report. And it was not a surprise. So that's out there before the deposition. Absolutely, that was before the deposition. You know, and your argument is how could they be surprised that he's saying the lateral injury was not as a result of the work accident when he says in his report that that's the surgery that was performed, and in my opinion, that surgery was not related to the work accident. Correct. Okay. And once we get past that, we're at manifest weight. And what's your argument on manifest weight? The opposite of my argument from yesterday. Yes, I noticed. The commission weighed the decisions of Dr. Levin, read the records of Dr. Schaefer, came to a conclusion that Dr. Levin, after an exhaustive cross-exam, was more persuasive than Dr. Schaefer. And the arbitrator and, by extension, the commission found that there was no causal relationship between the work accident and the surgery and the condition of ill-being. And, again, it is a manifest weight argument. And this Court has stated to me yesterday that you will defer to the commission on manifest weight issues. So you picked up on that and incorporated it into your argument this morning. I'm dumb. I'm not stupid. Thank you, Mr. Egan. Mr. Lele? Could you start out by addressing Justice Stewart's colloquy with opposing counsel? Yes. It is, in fact, the case that the rote fact of every single record he reviewed was placed into his medical record. I mean, he does say in the first report, I read the Socrates report, where... For 13 pages, he tells us what he read. That's true. And he read the... This is the first report. It's a two-page report. Right. And at the end of the first report, I don't know if you noticed, he says, but I can't draw any conclusions. Therefore, that report doesn't have any conclusions in it. It's nice that he charged them and wrote it and said, but, you know... What I heard you say in your initial argument was you were basically arguing that the doctor didn't know anything about any lateral. Right. He didn't know anything about any lateral repair. Exactly. And in fact, he had to be prompted by counsel, you know, that there even was a lateral. So we go to the report that contains his opinion that was the soccer injury that caused what occurred during surgery, and he very specifically marches through all that he knows, and that report is not in... Sorry. The operative report is not in that report. Rather conspicuously, he's now marching through the records of Dr. Schaefer, and in that report, there's no mention of... Or no acknowledgment that he knows that there's a lateral meniscus tear. And then we see his conclusion, which is completely harmonious with everything. So he doesn't have that report in his hand anymore. He's not reviewing anything in that report in his hand anymore. And if we have to stretch to find why I shouldn't be surprised to see just that he recounted... He didn't give an opinion. He recounted a fact in a report months earlier that's not in this report, then I am surprised. And it's a surprise by definition. We have to reach to find a way to not surprise me. Yet, as we've been discussing, there's a section in his report where he's answering the questions, giving his opinions. That's his only free hand. In his free hand, he only... Sorry, go ahead. Well, on this issue of your objection, the Section 12 issue, I mean, we've said there's not a bright line. Of course. And the problem is, I mean, you're a practitioner. You do this all the time. I mean, can we detail this down to where the exact words have to be said every time? Otherwise, the doctor's not allowed to testify. I mean, you know where that's going to go on litigation. I mean, we're going to... Every case is going to have some little... Totally agree. Yeah, we're talking two major parts of anatomy. One that was... This is not a typographical error. Legitimately, the meniscal concept was in play. He didn't mix them up. I'm sorry. The medial meniscal concept was in play. He didn't mix them up. He went with medial, and he gave the opinion to medial. He thought it was medial. We all thought it was medial. We went up there, and the only thing that wasn't there before was that. I just... Before I close, I just want to highlight... Let me just say... Okay. In his report, though, he acknowledges. I know. No. Do you know from reading his report? I don't read it that he's acknowledging that he knows anything. I read it that he's summarizing the medical records. He doesn't necessarily... Disagree. However, I mean, he says in there, I know they did this operation, and they repaired a lateral meniscus tear. And then he says, In my opinion, none of the surgery was as a result of a work-related accident. So how can you say you had no idea that he might express an opinion about the lateral meniscus? Because he didn't express an opinion about the lateral meniscus. He expressed an opinion about the medial meniscus. And the reference was not that he knew of anything, but that he's summarizing the medical records as he saw them. And that, what you're referring to, is one report ago and 11 pages earlier in that one report, oddly missing from the report that was supposed to be his opinions. At the end of the... Counsel, your time is up. Thank you. This matter will be taken under revisement. This position shall issue. Please call the next case.